Decided 15 June, 1903.

## STURGIS *v.* BAKER.

[72 Pac. 744.]

INDEFINITE COMPLAINT—EFFECT OF ANSWER.

1. Vague and indefinite complaints are sometimes sufficient after answer, though subject to a motion to make more certain. This is such a case: A widow brought an action to recover on a note found among her husband's private papers, but on its face payable to another, alleging that the original payee had transferred the note, and that she was then the owner and holder thereof. The maker answered by denying any knowledge as to her ownership and as to whether the note had been indorsed or transferred to her by the original payee. *Held,* that, while the complaint was uncertain and vague, it was sufficient, after answer, to admit proof of the source and chain of plaintiff's title.

NOTES—CONSTRUCTION OF STIPULATION.

2. An admission that a negotiable instrument was indorsed by the payee thereof to a person other than plaintiff is not an admission that the instrument was indorsed to plaintiff's predecessor in title, the names not being the same.

PLEADING—REAL PARTY IN INTEREST.

3. The defense that a suit is not brought by the real party in interest is proper only where it appears that defendant is cut off from a just offset or counterclaim against plaintiff's demand, and that a judgment in favor of plaintiff will not fully protect defendant when discharged.

COLLECTION OR SALE OF NOTE—INTENT OF PARTIES.

4. Where a note is sent to an agent for collection, and after maturity is paid by the agent, who was not liable thereon, the transaction will be treated, not as a payment, but as a purchase by the agent, if he intended it as such.

From Umatilla: W. R. Ellis, Judge.

This is an action on a promissory note, by Lina H. Sturgis against William Baker, and is heard on plaintiff's ap-

peal from the judgment at the second trial. The complaint states, in substance, that on the eighth day of December, 1893, the defendant, for value, executed and delivered to the Pendleton Mercantile Company his certain promissory note for the sum of $139, payable in six months from the date thereof, with interest at ten per cent per annum ; "that thereafter the Pendleton Mercantile Company indorsed and transferred the said promissory note, and this plaintiff is now the owner and holder thereof"; that no part of said note has been paid, and there is now due and owing, etc. The answer admits the execution, but denies that said Pendleton Mercantile Company thereafter or at any time "indorsed or transferred said note to plaintiff, or that she is now the owner or holder thereof," and all subsequent allegations of the complaint, and sets up payment in full by defendant to S. P. Sturgis, who claimed to have the note in his possession. When the cause came to trial, defendant's counsel admitted that the note was indorsed by the Mercantile Company to Akin, Selling & Co., and to further sustain her cause plaintiff offered testimony tending to show that it was found among the private papers of S. P. Sturgis, who died in 1896, and with his other assets passed into her possession as his widow and sole legatee, and that it has remained in her possession ever since ; that on the thirteenth of December, 1894, Sturgis was the cashier of the First National Bank of Pendleton, and was also loaning money on his own account, discounting notes and doing a general money loaning and brokerage business ; that on December 12 the said note was forwarded by Akin, Selling & Co. from Portland to the First National Bank of Pendleton for collection, with the request to send a check for the same; that, on the thirteenth, Sturgis, as cashier, remitted to the company $153.20 by Portland draft, and that such draft was purchased by Sturgis with his private funds ; that on the left-hand corner of the

note, near the bottom, was written in Sturgis' handwriting the figures "386" after the notation "No.," and on the top margin the words and figures "Pd. 13th Dec. 1894, 153.20," and some explanation was attempted to be made of the supposed meaning of these indorsements, in connection with the introduction of some private books and records of Mr. Sturgis, namely, that the figures "386" referred to his private bills receivable number, and the other memorandum indicated that he (Sturgis) paid, on December 13, 1894, $153.20 for the note.

To further substantiate her cause plaintiff called C. B. Wade, who testified, in substance, that he was assistant cashier of the First National Bank of Pendleton on December 13, 1894; that Sturgis occasionally bought notes and scrip for himself; that it was the custom of Sturgis to put the canceled stamp on all notes paid at the bank, whether belonging thereto or any one else; that he never knew him, as cashier of the bank, to mark a note paid, similar to the mark on the top of this note; that on his own notes he made memoranda on the margin for his own benefit in making up his books, which indicated that he had bought a note on a certain day or had remitted for one at such time, or some transaction of that kind; that he probably put the memoranda there to enable him to enter the proper date in his books, and that when he signed the name " S. P. Sturgis, Cashier," it was usually on account of the bank business. On cross-examination witness testified, over objection, that as assistant cashier he had nothing to do with the note; that he did not know of any authority to sell it, but that it was there, and Akin, Selling & Co. accepted payment on it, and that the bank never purchased it; that Sturgis did not usually use the blank forms of the bank in making remittances on account of his personal business unless it was transacted through the bank; that, if notes came into the bank to sell, he had just as

much right to sell to himself as to any one else; and, on redirect, that he did not know whether the bank purchased the note or not, or whether Sturgis purchased it of the bank; following which, defendant was permitted, over objection, to introduce evidence tending to show that Akin, Selling & Co. did not sell the note to either the First National Bank of Pendleton or Sturgis, and defendant testified in his own behalf that he paid the note to Sturgis. After being instructed, the jury returned a verdict in favor of the defendant, and, judgment being rendered thereon accordingly, the plaintiff appeals.          AFFIRMED.

For appellant there was a brief over the name of *Carter & Raley*, with an oral argument by *Mr. James H. Raley*.

For respondent there was a brief and an oral argument by *Mr. Thos. G. Hailey*.

MR. JUSTICE WOLVERTON delivered the opinion.

1. The first assignment of error is based upon the admission, over objection, of the testimony of Mr. Wade on cross-examination, and that of defendant's witnesses, tending to show that Akin, Selling & Co. did not sell the note to either the bank or Sturgis. It is insisted that this testimony tended to show that plaintiff was not the owner or holder of the note in question, but that some other person was, or — what counsel argues is the same thing — that she was not the real party in interest, and that it was incompetent because no such defense had been pleaded. The argument for plaintiff is that she alleged that the note was indorsed to her by the original payee, which was denied, but that at the opening of the case defendant's counsel admitted that it was indorsed by the original payee to Akin, Selling & Co.; that this disposed of the real issue upon the pleadings as to the ownership, and that the allegation that plaintiff is now the owner and holder is but a conclusion of law, and not the allegation of a material fact,

the denial of which put in issue the real ownership, so that defendant was not entitled under the pleadings, after the admission as to the indorsement, to adduce evidence for the purpose of showing that plaintiff was not the owner. The complaint in this particular is a little vague, and the denials are not entirely responsive. The allegations are " that thereafter the Pendleton Mercantile Company indorsed and transferred said promissory note, and this plaintiff is now the owner and holder thereof." The denial is of any knowledge or information as to whether or not " thereafter, at any time, said Pendleton Mercantile Company indorsed or transferred said note to plaintiff, or that she is now the owner or holder thereof." The allegation is not, as seems to have been supposed by the answer, that the mercantile company indorsed the note to plaintiff, but simply that it indorsed and transferred it. Then follows the averment that the plaintiff is the owner and holder thereof. The complaint might have been made more definite and certain in this regard, but it was not, and after answer it was sufficient to let in proof showing the source of plaintiff's acquisition and the manner in which Mr. Sturgis, her predecessor, obtained title from Akin, Selling & Co. She was at liberty to prove, either that she purchased from Akin, Selling & Co. directly, or through the First National Bank of Pendleton, and her evidence had some tendency to establish either of these conditions.

2. The admission that the note was indorsed by the original payee to Akin, Selling & Co. was not intended to be an admission that such company indorsed it to plaintiff's predecessor, because, if such had been the purpose, the incident would have ended the case, as plaintiff's ownership would have thus been established, and that is really the only issue in the case, aside from the one of payment. There was an issue, therefore, as to how plaintiff acquired

title to the note, and she was not precluded to establish the manner of her acquirement thereof by the admission that it was indorsed and transferred by the original payee to Akin, Selling & Co. That issue remained to be established. Was it transferred by Akin, Selling & Co. to plaintiff's predecessor? In this plaintiff had the burden of proof. Now, any testimony tending to show that the note was not transferred to the plaintiff in such manner as to clothe her with the legal or equitable title would be germane to the issue, and would tend to defeat her title, consequently her right to maintain the action. It is sufficient to say of Mr. Wade's testimony, of which complaint is made, that it was the result of an entirely proper cross-examination. The testimony of defendant's witnesses tending to show that Akin, Selling & Co. did not sell the note was a direct contradiction of plaintiff's purchase from that company, either directly or indirectly; hence it was both competent and relevant to dispute her title, so that the court was not in error in permitting the same to go to the jury.

3. The statute requiring that every action shall be prosecuted in the name of the real party in interest (B. & C. Comp. § 27) was enacted for the benefit of a party defendant, to protect him from being again harassed for the same cause. But if not cut off from any just offset or counterclaim against the demand, and a judgment in behalf of the party suing will fully protect him when discharged, then is his concern at an end. This is the test as to whether such a defense is properly interposed ( *Giselman* v. *Starr*, 106 Cal. 651, 40 Pac. 8), and, while the defense in general bars the action (Pomeroy, Code Rem., 3 ed., § 128), it is special in its nature, and, notwithstanding its interposition, anything that tends to defeat plaintiff's title can be shown under the general issue, ex-

*43 Or.—16.*

cept in cases where fraud is relied upon for that purpose.

4. The theory of counsel for plaintiff throughout the trial of the cause was that plaintiff's testator purchased the note of Akin, Selling & Co.; that it was sent by them to the bank for collection; and that, instead of collecting from Baker, the bank, as agent of Akin, Selling & Co., disposed of the note to Mr. Sturgis; hence his ownership. As pertinent to this theory of the case, the court charged the jury that the purchase of the note means the making of a contract, whereby the seller agrees to sell, and the buyer to purchase, for a consideration, and that unless they should find that there was a contract or agreement on the part of Akin, Selling & Co., or their agent, to sell the note to some one, their verdict should be for the defendant; and, as cognate to this, the court further charged that, when money is paid on account of a note after its maturity to the payee or his duly authorized agent by a third party not liable upon it, the transaction will be considered a purchase, if the party making the payment intended it to be such; that if, therefore, they should find from the evidence adduced that Mr. Sturgis paid the amount of the note after maturity to the First National Bank of Pendleton, and that, at the time, the bank held the note for collection or sale, and they should further find that Sturgis intended the transaction to be a purchase, then that it was such, and not a payment. Error is assigned because of these instructions. The latter instrucion is a modification in phraseology, but not in any essential degree, of one asked by plaintiff, so that she ought not to be found taking an exception thereto. But, however that may be, it is impossible to imagine how a purchase could be made of a note without a seller and a buyer, a consideration, and an agreement to effect a transfer. The plaintiff does not claim title by gift. It must then be by purchase, and it can only be accomplished through

agreement. This may, however, be express or implied. The former instruction pertains more directly to an express, and the latter to an implied, agreement of the kind, and, as applicable to the case at bar, we think the instructions are correct. In *Dodge* v. *Freedman's Sav. & T. Co.* 93 U. S. 379, it is held that in law a collecting bank is the agent of the holder of the note, and that where the intention to continue the existence of the note, and not to cancel it by the payment, is made evident when the money is paid to the collecting agent, and the owner of the note receives the amount due him, the transaction is treated and sustained as a purchase. These considerations dispose of all the contentions of counsel, and, finding no error, the judgment is affirmed.     AFFIRMED.

Decided 22 June, rehearing denied 3 August, 1903.